NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
ALEXIS D. GREGORIAN
A. BRENDAN STEWART
Trial Attorneys
United States Department of Justice
Fraud Section, Criminal Division
     4811 Airport Plaza Drive, 5th Floor
     Long Beach, California 90815
     Telephone: (202) 768-1172
     Facsimile: (562) 982-1799
     E-mail:    alexis.gregorian@usdoj.gov
                brendan.stewart@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                v.<br><br>TAMAR TATARIAN<br>     aka "Tamar Agajanian,"<br><br>            Defendant. | No. 2:18-CR-00361-JFW<br><br>GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS<br><br>Hearing: February 25, 2019<br>Time: 8:30 a.m.<br>Courtroom: 7A |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, the Fraud Section of the United States Department of Justice, and Trial Attorneys Alexis D. Gregorian and A. Brendan Stewart, hereby files its objections to the Presentence Report (Dkt. 102.)  These objections are based on the attached memorandum of points and authorities and exhibits, the files and records in this

1

case, and such further evidence and argument as the Court may permit.

Dated: February 5, 2019         Respectfully submitted,

                                NICOLA T. HANNA
                                United States Attorney

                                LAWRENCE S. MIDDLETON
                                Assistant United States Attorney
                                Chief, Criminal Division

                                      /s/
                                ─────────────────────────────────
                                ALEXIS D. GREGORIAN
                                A. BRENDAN STEWART
                                Trial Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Tamar Tatarian, also known as Tamar Agajanian, ("defendant") was charged by indictment on June 13, 2018, with one count of health care fraud, in violation of 18 U.S.C. §§ 1347, 2(b), and two counts of wire fraud, in violation of 18 U.S.C. § 1343. (Dkt. 1.)  Evidence introduced at trial demonstrated that defendant submitted and caused to be submitted to Medicare drug plans false and fraudulent claims for drugs, which claims falsely represented that defendant's pharmacy, Akhtamar Pharmacy, dispensed prescription drugs to Medicare beneficiaries when, in fact, defendant did not purchase these drugs from prescription drug wholesalers and Akhtamar Pharmacy did not dispense these drugs to Medicare beneficiaries.  In addition, evidence introduced at trial demonstrated that defendant caused the transmission of two emails by interstate wire for the purpose of covering up this scheme to defraud Medicare and Medicare drug plans.  On December 14, 2018, a jury found defendant guilty on all counts.  (Dkt. 93.)

On January 22, 2019, the United States Probation Office ("USPO") issued its Presentence Report ("PSR").  The USPO calculated defendant's base offense level as 6 under U.S.S.G. § 2B1.1(a)(2); applied a 16-level enhancement based on the loss to Medicare of $1,537,710.73 under U.S.S.G. § 2B1.1(b)(1)(I); applied a 2-level enhancement for conviction of a Federal health care offense involving a Government health care program under U.S.S.G, § 2B1.1(b)(7); and applied a 2-level enhancement for abuse of a position of trust under U.S.S.G. § 3B1.3.  Consequently, the USPO

calculated the total offense level to be 26, and based on a criminal history category of I, determined that the applicable Guidelines range is 63-78 months. (PSR ¶ 95.)

For the reasons set forth more fully below, the government objects to the following portions of the PSR: (1) its determination not to apply a 2-level enhancement for the commission of an offense involving sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C); and (2) its calculation of defendant's financial condition and ability to pay, which double counts the mortgages on defendant's property as liabilities and understates the fair market value of the property by approximately $100,050 (PSR ¶¶ 81, 87). In addition, the government suggests revisions to the PSR's description of defendant's enrollment in Medicare. (See PSR ¶¶ 9, 31.)

As detailed below, the government contends that the appropriate Guidelines calculation results in a total offense level of 28, with an advisory Guidelines range of 78-97 months. Moreover, the government submits that defendant's financial condition should be recalculated to reflect the fair market value of defendant's property and defendant's net worth. The government further submits that no variance is warranted based on defendant's conduct, work history, lack of criminal history, family circumstances, health issues, or any other factor, as will be argued in its separate sentencing memorandum.

**II.   STATEMENT OF FACTS**

Defendant and her husband, Vako Minas Agajanian, were the owners of Akhtamar Pharmacy in Pasadena, CA, which opened on or about September 28, 2015. (PSR ¶ 8.) Defendant, a licensed

2

pharmacy technician, was the manager of the pharmacy.  (Id.)  The majority of Akhtamar Pharmacy's patients had prescription drug insurance coverage through Medicare Part D.  (Id.)

Beginning shortly after she opened Akhtamar Pharmacy, but no later than October 2015, defendant began submitting and causing the submission of false and fraudulent claims to Medicare Part D drug plans for certain prescription drugs.  (PSR ¶ 10.)  These claims falsely represented that Akhtamar Pharmacy had dispensed certain prescription drugs to Medicare Part D patients when, in fact, defendant had not purchased enough of those drugs from prescription drug wholesalers and so could not have dispensed the drugs to the patients.  (Id.)

Following an audit by Medi-Cal in February 2017, which put defendant on notice that Akhtamar Pharmacy's drug purchase were being scrutinized, defendant attempted to conceal the fraud by creating false and fraudulent invoices, which reflected wholesale drug purchases by Akhtamar Pharmacy that never took place.  (PSR ¶¶ 11-12.)  On May 5, 2017, May 15, 2017, May 26, 2017, and August 16, 2017, defendant provided to a confidential cooperating witness ("CCW"), by email and in person, handwritten lists of prescription drugs that the defendant asked be reflected on fake wholesale invoices.  (PSR ¶ 13.)  The CCW then created fake backdated wholesale invoices that reflected the handwritten lists that defendant gave the CCW, thus making it appear as if defendant had actually purchased the drugs for which she had billed Medicare, when, in fact, she had not.  (Id.)

## III. A TWO-LEVEL ENHANCEMENT FOR SOPHISTICATED MEANS SHOULD BE APPLIED

A 2-level enhancement for sophisticated means is appropriate here and should be applied under U.S.S.G. § 2B1.1(b)(10)(C). The application notes define "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1, cmt. n.9(B) (emphasis added). Notably, the enhancement "'does not require a brilliant scheme, just one that displays a greater level of planning or concealment than the usual [ ] case.'" United States v. Jennings, 711 F.3d 1144, 1147 (9th Cir. 2013) (quoting United States v. O'Doherty, 643 F.3d 209, 220 (7th Cir. 2011)).

As discussed above, defendant's scheme to defraud Medicare included an elaborate effort to conceal the fraud through the creation of fake wholesale invoices. Specifically, over the course of four months in 2017, defendant had repeated contact with the CCW, during which defendant requested fake wholesale invoices by providing handwritten lists of the drugs that her pharmacy was "short" (i.e., had billed to Medicare drug plans, but never purchased from wholesalers). (See PSR ¶¶ 12-13.) Defendant told the CCW during a recorded conversation that defendant had two pharmacists working on these handwritten lists and was paying the pharmacists double shifts, time and a half, and weekends in order for the pharmacists to create the handwritten lists. (PSR ¶ 13 n.2.) Many of the handwritten lists included the price of the drugs backdated to the date that the defendant billed insurance for the

drugs. (Declaration of Alexis D. Gregorian (hereinafter "Gregorian Decl."), Exh. A (Gov't Trial Exh. 16)).

Using the handwritten lists from defendant, the CCW created fake backdated wholesale invoices. (PSR ¶ 13.) After the CCW provided these fake invoices to defendant, defendant sent the CCW text messages with pictures of the changes defendant wanted the CCW to make to the fake invoices. (Gregorian Decl., Exhs. B and C (Gov't Trial Exhs. 9, 9A).) Defendant also directed the CCW to make certain changes defendant to the fake invoices, including adding certain drugs to the invoices — along with the prices that corresponded to the backdate on the invoice to support the false and fraudulent pretense that the drugs were purchased two years prior from CCW's wholesale company (Gregorian Decl., Exh. D (transcript of Gov't Trial Exh. 14A)) — and changing the wording on the fake invoices (Gregorian Decl., Exh. E (transcript of Gov't Trial Exh. 15)). Defendant did so in order to make the fake invoices look like authentic wholesale invoices. The fraudulent invoices that defendant requested and received from the CCW reflected prescription drugs that Akhtamar Pharmacy had not purchased for the time period October 2015 through February 2017, and May 2017 through July 2017. (PSR ¶ 14.)

The defendant's detailed efforts to obtain 20 months' worth of authentic-looking fake invoices in order to conceal her fraud were aided by the defendant's licensure and experience as a pharmacy technician. Defendant knew what authentic, legitimate wholesale invoices looked like and the information they contained. Defendant spent significant time, effort, and money to provide the CCW with

the necessary information for the CCW to create fake backdated wholesale invoices for defendant that accurately depicted the amount of prescription drugs defendant's pharmacy was "short." Defendant also provided edits to those fake invoices to further the false pretense that these were legitimate invoices. The Ninth Circuit has found no error in applying the enhancement where a defendant has created false invoices to cover up unlawful payments. See, e.g., United States v. Tanke, 743 F.3d 1296, 1307 (9th Cir. 2014) (holding the district court did not err in applying the sophisticated means enhancement where defendant attempted to cover up embezzlement by creating at least six false invoices and other records to make payments appear legitimate, stating "[t]hese means as a whole were sufficiently sophisticated to support the district court's decision [to apply the sophisticated means enhancement]"). Accordingly, the sophisticated means enhancement should be applied.

**IV. DEFENDANT'S ABILITY TO PAY RESTITUTION SHOULD BE RECALCULATED**

The PSR provides that defendant and her husband own a residence located in Pasadena, California (the "residence"), which, according to the personal financial statement signed by defendant, has a reported fair market value of $900,000. (PSR ¶ 87.) However, the same residence secures defendant's bond and the affidavit of surety defendant filed with the Court on July 23, 2018 stated the fair market value of the property was $1,050,000. (Dkt. 28.) The appraisal for the residence supporting that valuation was conducted on June 29, 2018 and filed with the Court on July 26, 2018. (Dkt. 30, Exh. 3.) Accordingly, the government objects to the PSR to the extent that it finds that the fair market value of defendant's

residence is $900,000, and the government asserts that the fair market value should be $1,050,000 instead.

Moreover, the government objects to the PSR's calculation of defendant's assets and liabilities in paragraph 81.  The PSR lists only the equity in the residence as an "asset," having therefore deducted the value of the two mortgages the defendant holds on the property.  (See PSR ¶ 81.)  The PSR then lists the value of the two mortgages again under "liabilities," and deducts their value from defendant's assets a second time.  (See PSR ¶ 81.)  The government objects to this double-counting of defendant's mortgages in calculating defendant's net worth.  The government submits that paragraph 81 of the PSR should be revised to list defendant's residence as an "asset" with a value of $1,050,000, for a revised "total assets" figure of $1,079,797; defendant's mortgages should remain listed as liabilities; and defendant's net worth should be recalculated as $366,297.  Based on this recalculation, the government further submits that an immediate payment of restitution to the victim, Medicare, is appropriate.  (See PSR ¶ 92.)

**V.   CLARIFICATION REGARDING DEFENDANT'S ENROLLMENT IN MEDICARE**

The PSR provides that defendant "enrolled in Medicare to become a Medicare provider."  (PSR ¶ 9.)  The government submits that this statement should be revised to clarify that rather than enrolling directly in Medicare, defendant's pharmacy had contracts with Medicare drug plans, which were private companies through which Medicare administered the prescription drug benefit to Medicare beneficiaries, and with a Pharmacy Services Administration Organization ("PSAO"), which contracted with Medicare drug plans on

7

behalf of the pharmacy.  The PSR further provides that "[a]s a Medicare provider, Tatarian submitted claims to Medicare pursuant to an agreement with Medicare that she would submit claims to Medicare that were accurate, complete, and truthful."  (PSR ¶ 31.)  The government submits that rather than an agreement between defendant and Medicare, defendant's pharmacy had agreements with Medicare drug plans and with the PSAO, which included covenants that defendant's pharmacy was in compliance with Medicare dispensing requirements and all applicable state and federal laws.  The PSR should be revised to reflect this clarification.

These suggested revisions notwithstanding, the government submits that the PSR's application of the abuse of a position of trust enhancement under U.S.S.G. § 3B1.3 is appropriate.  The Guidelines define "a position of public trust" as one "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)."  U.S.S.G. § 3B1.3, cmt. n.1.  The Ninth Circuit has explained that "the presence or lack of 'professional or managerial discretion' represents the decisive factor in deciding whether a defendant occupied a position of trust," and that "[a] defendant has this discretion when, because of [] her special knowledge, expertise, or managerial authority, [she] is trusted to exercise substantial discretionary judgment that is ordinarily given considerable deference."  United States v. Laurienti, 731 F.3d 967, 973 (9th Cir. 2013).  As an owner, the manager, and a licensed pharmacy technician, defendant had both professional and managerial discretion at her pharmacy and Medicare trusted defendant's pharmacy

to submit truthful claims to the Medicare drug plans.  Defendant abused her position of trust by submitting and causing the submission of false and fraudulent claims through her pharmacy to Medicare drug plans for prescription drugs that her pharmacy never dispensed to patients.  Therefore, as stated in the PSR (PSR ¶ 31), the enhancement should apply.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully submits that the PSR should be revised to reflect an enhancement for sophisticated means, a recalculation of defendant's total net worth and ability to pay restitution, and revised language regarding defendant's enrollment in Medicare.

**CERTIFICATE OF SERVICE**

I, **Kelly Chung** declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction on **February 5, 2019** I served a copy of:

**GOVERNMENT'S OBJECTIONS TO PRESENTENCE REPORT; DECLARATION OF ALEXIS D. GREGORIAN; EXHIBITS**

| | |
|---|---|
| X Placed in a closed envelope for collection and inter-office delivery, addressed as follows:<br>**Leslie Crews**<br>**United States Probation Officer**<br>**600 U.S. Courthouse,**<br>**312 N. Spring St.**<br>**Los Angeles, CA 90012**<br>**(213) 894-6015** | ☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows: |
| ☐ By hand delivery, addressed as follows: | ☐ By facsimile, as follows: |
| ☐ Via email, as follows: | ☐ By Federal Express, as follows: |

This Certificate is executed on **February 5, 2019**, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

_____
Kelly Chung
Paralegal